# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SECURITIZE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 26-00722-GBW~~UNA~~ |
| | ) | |
| TZERO GROUP, INC. and TZERO IP, LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## DEFENDANT TZERO IP, LLC'S FIRST AMENDED ANSWER AND

## COUNTERCLAIMS

tZERO IP, LLC. ("tZERO") answers Securitize, Inc.'s ("Securitize") Complaint for Declaratory Judgment of Non-Infringement ("Complaint") as follows:

1. tZERO lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 and therefore denies them.

2. tZERO admits that tZERO Group Inc. ("tZERO Group"), together with its subsidiaries, provides infrastructure to bring assets on-chain and to enable access to tokenized assets through its SEC-registered broker-dealer and alternative trading system ("ATS"). tZERO admits that in December 2025, it issued a disclosure statement to investors acknowledging an accumulated deficit and indicated a risk factor regarding the blockchain utilization of tZERO Group's broker-dealer subsidiaries, both historically and as of the date of the disclosure statement. The disclosure statement speaks for itself. The websites referenced by Securitize in its Complaint speak for themselves. tZERO denies any remaining allegations in paragraph 2.

3. tZERO admits that its outside litigation counsel sent a letter dated June 15, 2026 to Securitize alleging infringement of U.S. Patent Nos. 11,216,802 ("the '802 Patent") and

11,394,560 ("the '560 Patent") (collectively, the "Asserted Patents"). tZERO admits it issued a press release entitled "tZERO Provides an Update on its IP Portfolio Enforcement and Highlights Additional Patented Inventions Supporting the Evolution of Tokenized Capital Markets," which speaks for itself. tZERO denies any remaining allegations in paragraph 3.

4.    tZERO admits that the Complaint purports to bring claims for declaratory judgment of non-infringement against tZERO and tZERO Group. tZERO denies that the Complaint states a proper claim for declaratory judgment of non-infringement of any patent and that such claim has any merit. tZERO denies any remaining allegations in Paragraph 4.

## NATURE OF THE ACTION

5.    Paragraph 5 states legal conclusions and allegations to which no answer is required. To the extent an answer is deemed required, tZERO admits that the claims in the Complaint purport to state a claim for declaratory judgment of non-infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq*. tZERO denies that the Complaint states a proper claim for declaratory judgment of non-infringement of any patent and that such claim has any merit. tZERO denies any remaining allegations in Paragraph 5.

## THE PARTIES

6.    On information and belief, tZERO admits that Securitize is a Delaware corporation with its headquarters located at 78 SW 7th Street, Suite 500, Miami, FL 33130.

7.    tZERO admits that tZERO Group is a corporation formed under the laws of Delaware with its principal places of business located at 10 West Broadway, Suite 700, Salt Lake City, UT 84101 and 525 Washington Blvd, Suite 300, Jersey City, New Jersey, 07310. tZERO admits that tZERO Group's registered agent is The Corporation Trust Company, Corporation

Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801. tZERO denies any remaining allegations in Paragraph 7.

8.      tZERO admits that it is a wholly owned subsidiary of tZERO Group and that it is a corporation formed under the laws of Delaware. tZERO admits that it shares office space with tZERO Group and its registered agent is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801. tZERO denies any remaining allegations in Paragraph 8.

## JURISDICTION AND VENUE

9.      Paragraph 9 states legal conclusions and allegations to which no answer is required. To the extent an answer is deemed required, tZERO admits that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.      Paragraph 10 states legal conclusions and allegations to which no answer is required and which pertain to a different party, tZERO Group. On that basis, tZERO denies any remaining allegations in Paragraph 10.

11.      Paragraph 11 states legal conclusions and allegations to which no answer is required. To the extent an answer is deemed required, tZERO does not contest whether personal jurisdiction over it properly lies in this district in this case. tZERO denies any remaining allegations in Paragraph 11.

12.      Paragraph 12 states legal conclusions and allegations to which no answer is required. To the extent an answer is deemed required, tZERO admits venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)–(c) and 28 U.S.C. § 1400.

## EXISTENCE OF ACTUAL CONTROVERSY

13.      tZERO incorporates by reference the preceding paragraphs of this Answer.

14. Paragraph 14 states legal conclusions and allegations to which no answer is required. To the extent an answer is deemed required, tZERO admits that this Court has subject matter jurisdiction pursuant over declaratory judgment claims pursuant to 28 U.S.C. §§ 2201 and 2202. tZERO denies the remaining allegations in Paragraph 14.

15. tZERO admits that on June 15, 2026 its outside litigation counsel sent a letter to Securitize's registered agent in Delaware with the subject "tZERO's Enforcement of Patent Rights." tZERO admits that a courtesy copy of this letter was provided to Securitize via email on June 12, 2026. tZERO admits that the quoted language appears in the June 15, 2026 letter and that the letter speaks for itself. tZERO denies any remaining allegations in Paragraph 15.

16. tZERO admits that on June 15, 2026 it issued a press release titled "tZERO Provides an Update on its IP Portfolio Enforcement and Highlights Additional Patented Inventions Supporting the Evolution of Tokenized Capital Markets," which speaks for itself. tZERO denies any remaining allegations in Paragraph 16.

17. tZERO denies the allegations in Paragraph 17.

18. tZERO denies the allegations in Paragraph 18.

## THE ASSERTED PATENTS

19. tZERO admits the '802 Patent is titled "Self-enforcing security token implementing smart-contract-based compliance rules consulting smart-contract-based global registry of investors." tZERO admits that Securitize purports to attach a copy of the '802 Patent to the Complaint as Exhibit A. tZERO admits that the face of the complaint identifies as its inventors Scott Overholser of Salt Lake City, Utah; Robert Christensen of Sandy, Utah; Nicole Sanders of Cottonwood Heights, Utah; Justin Wilson of Draper, Utah; Robert Valmassoi of New

York, New York; Chase Lester of West Jordan, Utah; and Michael William Stuart Smith of Provo, Utah. tZERO denies any remaining allegations in Paragraph 19.

20. tZERO admits the allegations in Paragraph 20.

21. tZERO admits the '560 Patent is titled "Crypto integration platform." tZERO admits that Securitize purports to attach a copy of the '560 Patent to the Complaint as Exhibit B. tZERO admits that the face of the complaint identifies as its inventors Alec Wilkins of Salt Lake City, Utah; Eric Nathaniel Fish of Salt Lake City, Utah; Trent Norman Larson of Bountiful, Utah; and Patrick M. Byrne of Salt Lake City, Utah. tZERO denies any remaining allegations in Paragraph 21.

22. tZERO admits the allegations in Paragraph 22.

## CAUSES OF ACTION

### COUNT ONE
**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 11,216,802)**

23. tZERO incorporates by reference the preceding paragraphs of this Answer.

24. tZERO denies the allegations in Paragraph 24.

25. tZERO denies the allegations in Paragraph 25.

26. tZERO admits the allegations in Paragraph 26.

27. tZERO denies the allegations in Paragraph 27.

28. tZERO denies the allegations in Paragraph 28.

29. tZERO denies the allegations in Paragraph 29.

### COUNT TWO
**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 11,394,560)**

30. tZERO incorporates by reference the preceding paragraphs of this Answer.

31. tZERO denies the allegations in Paragraph 31.

32. tZERO denies the allegations in Paragraph 32.

33.    tZERO admits the allegations in Paragraph 33.

34.    tZERO denies the allegations in Paragraph 34.

35.    tZERO denies the allegations in Paragraph 35.

36.    tZERO denies the allegations in Paragraph 36.

## PRAYER FOR RELIEF

WHEREFORE, tZERO denies that Securitize is entitled to any of the relief requested in its prayer for relief, or any relief whatsoever. tZERO respectfully requests that the Court (a) enter judgment in favor of tZERO, (b) dismiss Securitize's claims against tZERO with prejudice, (c) declare this case as exceptional and award tZERO its attorney fees, costs, and expenses pursuant to 35 U.S.C. § 285, and (d) grant any such other relief that this Court may deem just and proper.

## JURY DEMAND

No response is required to the section entitled "Jury Demand." To the extent a response is required tZERO demands a trial by jury on all issues so triable.

## AFFIRMATIVE DEFENSES

In addition to the defenses set forth herein, tZERO  expressly reserves the right to assert any defenses or affirmative defenses under the Federal Rules of Civil Procedure, the patent laws of the United States, and any other defense, at law or in equity, that may now exist or in the future become known or available based upon discovery and further investigation in this case. Without altering any applicable burden of proof, tZERO  asserts the following defenses:

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

Securitize fails to state a claim upon which relief may be granted.

## tZERO IP, LLC'S COUNTERCLAIMS

Defendant and counterclaimant tZERO IP, LLC ("tZERO"), by and through its undersigned counsel, brings the following counterclaims against plaintiff and counterdefendant Securitize:

### PARTIES

1. tZERO is a corporation duly organized and existing under the laws of Delaware with its principal places of business located at 10 West Broadway, Suite 700, Salt Lake City, UT 84101 and 525 Washington Blvd, Suite 300, Jersey City, New Jersey, 07310.

2. On information and belief, Securitize is a corporation duly organized and existing under the laws of Delaware with its headquarters and principal place of business located at 78 SW 7th Street, Suite 500, Miami, Florida 33130.

### JURISDICTION AND VENUE

3. This action arises under the U.S. Patent Act, codified at 35 U.S.C. § 1 *et seq.*, and, including but not limited to, 35 U.S.C. §§ 271, 281, 283, 284 and 285.

4. This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a) because the claims arise under the patent laws of the United States.

5. Securitize has consented to the personal jurisdiction of this Court at least by commencing its action in this District, as set forth in its Complaint.

6. Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(b).

### tZERO AND THE ASSERTED PATENTS

7. tZERO Group Inc. ("tZERO Group") is a financial technology company that was founded in 2014 to develop commercial applications of blockchain and financial technology. tZERO Group, together with its wholly-owned subsidiaries that include tZERO IP, LLC and

tZERO Technology, LLC, has expanded to become a premier vertically integrated, regulated infrastructure-as-a-service (IaaS) provider for the tokenized securities lifecycle. tZERO Group wholly owns two SEC-registered broker-dealers, which are licensed to facilitate the issuance, trading, clearance, settlement and custody of tokenized securities. Each broker-dealer subsidiary is also licensed to act as a correspondent clearing firm for other broker-dealers.

8.      tZERO Group has invested substantial time, research, and capital to develop a leading intellectual property portfolio in the blockchain tokenization industry that encompasses over one hundred patents worldwide. This extensive patent portfolio focuses on compliant, scalable, and interoperable tokenized capital markets infrastructure, including the tokenization of securities and digital assets.

9.      ~~tZERO is the assignee of all rights, titles, and interests in and to the Asserted Patents and holds the right to sue and recover damages for past, present, and future infringement thereof. Securitize is not licensed to practice the Asserted Patents.~~

~~10.~~9.    The '802 Patent issued on January 4, 2022 and is titled "Self-enforcing security token implementing smart-contract-based compliance rules consulting smart-contract-based global registry of investors." A copy of the '802 Patent is attached hereto as **Exhibit 1**.

~~11.~~10.  The inventions of the '802 Patent generally relate to the execution of transactions involving tokenized security assets on a blockchain system based on compliance rules or regulations associated with the tokenized security asset.

~~12.~~11.  The '560 Patent issued on July 19, 2022 and is titled "Crypto integration platform." A copy of the '560 Patent is attached hereto as **Exhibit 2**.

~~13.~~12.  The inventions of the '560 Patent generally relate to authorizing trades on a trading platform for accounts with a common identifier utilizing cryptographic keys.

8

13.    U.S. Patent No. 12,223,496 ("the '496 Patent") issued on February 11, 2025 and is titled "Self-enforcing security token implementing smart-contract-based compliance rules consulting smart-contract-based global registry of investors." A copy of the '496 Patent is attached hereto as **Exhibit 3.**

14.    The inventions of the '496 Patent generally relate to the execution of transactions involving tokenized security assets on a blockchain system based on compliance rules or regulations associated with the tokenized security asset.

15.    U.S. Patent No. 12,099,996 ("the '996 Patent") issued on September 24, 2024 and is titled "Verifying transaction address is whitelisted before allowing transfer to transaction address of self-regulating token requiring whitelisted transaction address to withdraw self-regulating token." A copy of the '996 Patent is attached hereto as **Exhibit 4**.

16.    The inventions of the '996 Patent generally relate to controlling transfers of tokenized assets by requiring that a target transaction address be verified and whitelisted before transfer.

17.    U.S. Patent No. 12,051,078 ("the '078 Patent") issued on July 30, 2024 and is titled "Account owner funding of know your customer and accredited investor verification renewal and monitoring charges through coin payment." A copy of the '078 Patent is attached hereto as **Exhibit 5**.

18.    The inventions of the '078 Patent generally relate to blockchain-based systems that utilize payment of an amount of cryptocurrency to cause a know-your-customer ("KYC"), anti-money laundering ("AML") or accredited investor review to be performed for an account owner.

9

19.     tZERO is the assignee of all rights, titles, and interests in and to the '802 Patent, the '560 Patent, the '496 Patent, the '996 Patent, and the '078 Patent (collectively, the "Patents-in-Suit") and holds the right to sue and recover damages for past, present, and future infringement thereof. Securitize is not licensed to practice the Patents-in-Suit.

14.20.  The inventions claimed in the '802, '560, '496, '996, and ~560'078 Patents reflect significant technological advancements in blockchain-based systems for digital securities and assets. The claims are generally directed to concrete technological solutions that improve how digital asset transfers are validated, authorized, and executed within distributed ledger environments, rather than to abstract ideas. The claimed elements, both individually and as ordered combinations, were not well understood, routine, or conventional as of the patents' respective priority dates.

15.21.  For example, the '802 Patent includesand '496 Patents include methods, systems, and non-transitory computer readable media that enforce compliance rules through smart contract execution and validate transfer conditions against a global registry containing personally identifiable information hash for at least one investor and indications of securities regulations. As another example, theThe '560 Patent includes methods, systems, and non-transitory computer readable media that include an order to execute a trade associated with a first account and a second account that are associated with a common identifier and cryptographically signing a first and second transaction using the same cryptographic key before an order is authorized. The '996 Patent includes methods, systems, and non-transitory computer-readable media that verify that a transaction address is associated with a cryptographic key and is authorized or whitelisted before permitting a token transfer or purchase. The '078 Patent includes methods, systems, and non-transitory computer-readable media that utilize cryptocurrency transactions to trigger KYC,

AML, and accredited-investor verification reviews. These features, whether considered individually or in combination, represent non-conventional approaches that improve the security, reliability, ~~and~~ integrity, and regulatory compliance of digital securities issuance, transfer, investor verification, and trading systems.

### SECURITIZE'S INFRINGING PRODUCTS

~~16.~~22.  Securitize is a financial technology company that was founded in 2017. Securitize provides blockchain-based infrastructure for the issuance, management, and trading of digital securities and tokenization of real-world assets.

~~17.~~23.  Securitize offers for use in the United States and in this District an open-source blockchain infrastructure called Digital Securities Protocol ("DS Protocol"). DS Protocol manages the relevant events associated with security token ownership and management, including the economic rights of the security token, using specific applications that are designed to eliminate existing (and future) liquidity, management, and compliance issues at the security token level relating to trading security tokens privately, and on exchanges. DS Protocol infringes the '802 Patent, the '496 Patent, the '996 Patent, and the '078 Patent.

~~18.~~24.  Securitize's Vault Registrar~~, which~~, on information and belief, is available on DS Protocol. Vault Registrar is a smart contract infrastructure that permits investors to create "vaults" that act as smart wallets that hold tokens while maintaining on-chain compliance to preserve beneficial ownership. Securitize's Vault Registrar infringes the '560 Patent.

~~19.~~25.  On information and belief, Securitize provides DS Protocol and Vault Registrar in the United States, including in this District. Securitize open sourced its DS Protocol, making it broadly accessible to customers, developers, and users throughout the United States and worldwide. *See, e.g.,* https://medium.com/@jorge.serna/ds-protocol-first-code-release-7470e4d45ae6 (last visited June 16, 2026).

11

26. tZERO, through counsel, sent a letter to Securitize's registered agent on June 15, 2026, with a courtesy copy to Securitize via email on June 13, 2026. In its letter, tZERO identified ~~the~~several patents and exemplary claims that tZERO alleges to be infringed by Securitize, including Securitize's DS Protocol and Vault Registrar. Securitize did not respond to this communication and instead filed the present Complaint.

27. Securitize continues to offer DS Protocol and Vault Registrar in this District and throughout the United States.

28. Securitize has been on notice of its infringement of the ~~Asserted Patents~~'802 Patent, the '560 Patent, the '996 Patent, and the '078 Patent since at least June 15, 2026, the date the letter was received by Securitize's agent, or at least by June 13, 2026, the date the letter was received by Securitize via email.

29. With respect to ~~the both the '802 Patent and '560 Patent,~~all of the Patents-in-Suit, tZERO has satisfied the statutory requirement to mark its products in accordance with 35 U.S.C. § 287.

## COUNT 1: INFRINGEMENT OF U.S. PATENT NO. 11,216,802

30. tZERO realleges and incorporates by reference the allegations contained in the preceding paragraphs.

31. Securitize has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims (including, at least, claims 1, 3, 4, and 5) of the '802 Patent, in violation of 35 U.S.C. Section 271(a) by, at least, making, using, selling, offering for sale, and/or importing DS Protocol within the United States. DS Protocol has been placed in the stream of commerce into the United States by Securitize and has been imported into, used, sold, and/or offered for sale in the United States.

26.32.  Claim 1 of the '802 Patent recites: A network node comprising: at least one processor; at least one memory communicatively coupled to the at least one processor; at least one network interface communicatively coupled to the at least one processor; wherein the network node is configured to be within a plurality of network nodes communicatively coupled in a peer-to-peer network of network nodes implementing a distributed ledger; wherein the network node is configured to be communicatively coupled to at least one remotely located computing device through the at least one network interface; wherein the at least one processor is configured to: receive, from a remotely located computing device, a request to transfer a security token; execute a plurality of compliance rules associated with the security token; wherein at least one of the plurality of compliance rules is implemented using at least one smart contract separate from an originating smart contract that implements the security token; wherein the at least one smart contract is implemented on the distributed ledger and references a global registry; transfer the security token based on the execution of the plurality of compliance rules; wherein the global registry comprises at least one personally identifiable information (PII) hash for each of at least one investor associated with the transfer of the security token, wherein the at least one PII hash for each of the at least one investor is committed to the distributed ledger, wherein each of the at least one PII hash is updated when PII of a respective one of the at least one investor changes; wherein the global registry further comprises at least one indication of: whether an offering of the security token qualifies under Securities and Exchange Commission (SEC) Regulation A; whether at least one of the at least one investor qualifies under SEC Regulation D; whether the offering of the security token qualifies under SEC Regulation S; and whether anti-money laundering and know-your-customer (AML/KYC) checks have been performed for the at least one investor associated with the transfer of the security token.

27.33.  Claim 3 of the '802 Patent recites: The network node of claim 1, wherein the at least one indication of the global registry further comprises at least one indication of: whether a freeze has been placed on any of the at least one investor; whether a freeze has been placed on the security token; whether a freeze has been placed on a custodian associated with the transfer of the security token; and whether a freeze has been placed on any broker dealer associated with the transfer of the security token.

28.34.  Claim 4 of the '802 Patent recites: The network node of claim 3, wherein a freeze is placed on or removed from any of the at least one investor by modifying attributes in an investor element in the global registry; wherein a freeze is placed on or removed from the security token by modifying attributes in a security token element in the global registry; wherein a freeze is placed on or removed from the custodian by modifying attributes in a custodian element in the global registry; and wherein a freeze is placed on or removed from any broker dealer associated with the transfer of the security token by modifying attributes in a broker dealer element in the global registry.

29.35.  Claim 5 of the '802 Patent recites: The network node of claim 3, wherein the global registry comprises a data storage smart contract that stores the at least one indication in the global registry.

30.36.  A claim chart showing how the DS Protocol meets each of the elements of claims 1, 3, 4, and 5 of the '802 Patent is attached hereto as **Exhibit 36**.

31.37.  Contrary to paragraph 28 of Securitize's Complaint, Securitize's GitHub repository for DS Protocol's reference implementation DSToken states: "The personal data of the investors is stored hashed on the blockchain, to maintain privacy."

14

32.38.  Also contrary to paragraph 28 of Securitize's Complaint, in a May 29, 2019 publication, a Securitize engineer explained that "the Registry Service holds investor attributes that can identify an investor as a member of a generic category: an accredited U.S. investor, a retail Germany investor, etc. This characterization is fundamental to fulfilling the goal of applying regulatory constraints to trades. . . [The] Compliance Service would not be able to provide its functions if not for the information provided by the Registry Service." (DS Protocol — The Trust and Registry Service, https://medium.com/securitize/ds-protocol-the-trust-and-registry-services-91d1c4630f78 (last accessed June 25, 2026).)

33.39.  Further, on information and belief, Securitize has and continues to indirectly infringe one or more claims of the '802 Patent, including claims 1, 3, 4 and 5, by knowingly and intentionally inducing others, including third-party customers and/or end-users to directly infringe, either literally or under the doctrine of equivalents, by making, using, selling, offer to sell, and/or importing into the United States DS Protocol.

34.40.  On information and belief, Securitize, with knowledge that DS Protocol infringes the '802 Patent at least as of the June 15, 2026 letter from tZERO, knowingly and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '802 Patent by its third-party customers and/or end-users who pay Securitize a fee for transactions and other services performed by DS Protocol.

35.41.  Securitize induced, with specific intent, infringement of the '802 Patent by its third-party customers and/or end-users by encouraging them and instructing them to use DS Protocol to infringe the '802 Patent. Securitize has created and disseminated blog posts, technical materials, instructional materials and marketing materials online that encourage and promote the use of DS Protocol to infringe the '802 Patent. *See,* DS Protocol Interfaces Released, *available at*

15

https://medium.com/@jorge.serna/ds-protocol-first-code-release-7470e4d45ae6 (last visited June 17, 2026); DS Protocol – The Basic Elements, *available at* https://medium.com/securitize/ds-protocol-the-basic-elements-23fabcb5c85f; DS Protocol – The Compliance Service Elements, https://medium.com/securitize/ds-protocol-the-basic-elements-23fabcb5c85f (last visited June 17, 2026). Securitize took these actions with the specific intent to induce acts constituting infringement, and knowing that the induced acts constitute patent infringement, either literally or under the doctrine of equivalents.

36.42.  Securitize has actively encouraged infringement by others by also making DS Protocol's reference implementation and code repository available online as open-source code. This encourages others to infringe by providing access to the infringing system and its components. https://github.com/securitize-io/DSTokenInterfaces (last visited June 17, 2026).

37.43.  On information and belief, Securitize has actively been contributing and is now knowingly contributing to direct infringement by their customers, third parties, and one another, by selling, offering for sale and/or importing, and knowingly selling, offering for sale and/or importing within the United States DS Protocol, with knowledge that the infringing technology is especially made for use in infringement of the '802 Patent. Securitize has contributed to the infringement by others with knowledge that the infringing technology in DS Protocol is a material part of the patented invention, with knowledge that the infringing technology is not a staple article of commerce suitable for substantial non-infringing use, and with knowledge that others do not have any substantial non-infringing uses therefor. Securitize has such knowledge at least because the claimed features of the '802 Patent are used by tZERO within the United States.

38.44.  On information and belief, Securitize knew or should have known of the '802 Patent and has acted, and continues to act, in an egregious and wanton manner by infringing the '802 Patent. On information and belief, Securitize's infringement of the '802 Patent has been and continues to be willful and deliberate.

39.45.   On information and belief, despite knowing that its actions constituted infringement of the '802 Patent and/or despite knowing that there was a high likelihood that its actions constituted infringement of the patent, Securitize nevertheless continued its infringing actions.

40.46.  tZERO has been damaged by, and will continue to be damaged by, Securitize's infringement of the '802 Patent, and is therefore entitled to recover damages from Securitize to compensate for the infringement under at least 35 U.S.C. § 284, to recover damages from Securitize in an amount adequate to compensate for its acts of infringement, but in no event less than a reasonable royalty for Securitize's acts of infringement, together with interest and costs as fixed by the Court.

41.47.  Securitize's infringement is deliberate, intentional, and willful at least because Securitize has had notice of infringement of the '802 Patent since receiving tZERO's letter dated June 15, 2026. and continues to infringe the '802 Patent.

**COUNT 2: INFRINGEMENT OF U.S. PATENT NO. 11,394,560**

42.48.  tZERO realleges and incorporates by reference the allegations contained in the preceding paragraphs.

43.49.  Securitize has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims (including, at least, claim 1) of the '560 Patent, in violation of 35 U.S.C. Section 271(a) by, at least, making, using, selling, offering for

sale, and/or importing the DS Protocol's Vault Registrar within the United States. DS Protocol and Vault Registrar have been placed in the stream of commerce into the United States by Securitize and has been imported into, used, sold, and/or offered for sale in the United States.

44.50.  Claim 14 of the '560 Patent recites: A method, comprising: receiving an order to execute a trade of at least one transactional item associated with a first account, wherein the order, the first account, and a second account are associated with a common identifier; cryptographically signing, using a cryptographic key, a first transaction to transfer the at least one transactional item from the first account to the second account; cryptographically signing, using the cryptographic key, a second transaction that includes the order; verifying that the first transaction and the second transaction were both cryptographically signed using the cryptographic key; and authorizing placement of the order on an exchange if the first transaction and the second transaction were both cryptographically signed using the cryptographic key.

45.51.  A claim chart showing how Vault Registrar meets each of the elements of at least claim 14 of the '560 Patent is attached hereto as **Exhibit 47**.

46.52.  Contrary to paragraph 35 of Securitize's Complaint, in an April 29, 2026 publication, a Securitize developer and product manager discussed Securitize's Vault Registrar and confirmed that "[t]he registration [of each investor's vault] is gated by a cryptographic signature from the investor, ensuring that custody always maps back to a verified identity and it is done following investors instructions." (Building for DeFi Integration: The Vault Registrar Sandbox,  https://medium.com/securitize/building-for-defi-integration-the-vault-registrar-sandbox-78ea507cc753 (last visited June 25, 2026).)

47.53.  Further, on information and belief, Securitize has and continues to indirectly infringe one or more claims of the '560 Patent, including at least claim 14, by knowingly and

intentionally inducing others, including third-party customers and/or end-users to directly infringe, either literally or under the doctrine of equivalents, by making, using, selling, offer to sell, and/or importing into the United States DS Protocol and Vault Registrar.

48.54.  On information and belief, Securitize, with knowledge that Vault Registrar infringes the '560 Patent at least as of the June 15, 2026 correspondence from tZERO, knowingly and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '560 Patent by its third-party customers and/or end-users who pay Securitize a fee for transactions and other services performed by DS Protocol and Vault Registrar.

49.55.    Securitize induced, with specific intent, infringement of the '560 Patent by its third-party customers and/or end-users by encouraging them and instructing them to use DS Protocol to infringe the '560 Patent. Securitize has created and disseminated blog posts, technical materials, instructional materials and marketing materials online that encourage and promote the use of DS Protocol and Vault Registrar to infringe the '560 Patent. *See,* Vault Registrar, Revisited: Explicit Authorizations, Standardization, and Multichain Support, available at https://medium.com/securitize/vault-registrar-revisited-explicit-authorizations-standardization-and-multichain-support-a5f355c873d2 (last visited June 17, 2026); Building for DeFi Integration: The Vault Registrar Sandbox, available at https://medium.com/securitize/building-for-defi-integration-the-vault-registrar-sandbox-78ea507cc753 (last visited June 17, 2026); Vault Registrar, Revisited: Explicit Authorizations, Standardization, and Multichain Support, *available at* https://medium.com/securitize/vault-registrar-revisited-explicit-authorizations-standardization-and-multichain-support-a5f355c873d2 (last visited June 17, 2026). Securitize took these actions with the specific intent to induce acts constituting infringement, and knowing that the induced acts constitute patent infringement, either literally or under the doctrine of equivalents.

50.56.  On information and belief, Securitize has actively been contributing and is now knowingly contributing to direct infringement by its customers, third parties, and one another, by selling, offering for sale and/or importing, and knowingly selling, offering for sale, and/or importing within the United States DS Protocol and Vault Registrar, with knowledge that the infringing technology is especially made for use in infringement of the '560 Patent. Securitize has contributed to the infringement by others with knowledge that the infringing technology in DS Protocol is a material part of the patented invention, with knowledge that the infringing technology is not a staple article of commerce suitable for substantial non-infringing use, and with knowledge that others do not have any substantial non-infringing uses therefor. Securitize has such knowledge at least because the claimed features of the '560 Patent are used by tZERO within the United States.

51.57.  On information and belief, Securitize knew or should have known of the '560 Patent and has acted, and continues to act, in an egregious and wanton manner by infringing the '560 Patent. On information and belief, Securitize's infringement of the '560 Patent has been and continues to be willful and deliberate.

52.58.  On information and belief, despite knowing that its actions constituted infringement of the '560 Patent and/or despite knowing that there was a high likelihood that its actions constituted infringement of the patent, Securitize nevertheless continued its infringing actions.

53.59.  tZERO has been damaged by, and will continue to be damaged by, Securitize's infringement of the '560 Patent, and is therefore entitled to recover damages from Securitize to compensate for the infringement under at least 35 U.S.C. Section 284, to recover damages from Securitize in an amount adequate to compensate for their acts of infringement, but in no event

less than a reasonable royalty for Securitize's acts of infringement, together with interest and costs as fixed by the Court.

54.60.  Securitize's infringement is deliberate, intentional, and willful at least because Securitize has had notice of infringement of the '560 Patent since receiving tZERO's communication dated June 15, 2026 and continues to infringe the '560 Patent.

### COUNT 3: INFRINGEMENT OF U.S. PATENT NO. 12,223,496

61.    tZERO realleges and incorporates by reference the allegations contained the preceding paragraphs.

62.    Securitize has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims (including, at least, claims 13 and 24) of the '496 Patent, in violation of 35 U.S.C. Section 271(a) by, at least, making, using, selling, offering for sale, and/or importing DS Protocol within the United States. DS Protocol has been placed in the stream of commerce into the United States by Securitize and has been imported into, used, sold, and/or offered for sale in the United States

63.    Claim 13 of the '496 Patent recites: A computerized method for transferring a self-enforcing security token, wherein the computerized method is performed by a network node configured to be included within a plurality of network nodes in a peer-to-peer network of network nodes implementing a distributed ledger, wherein the network node is configured to be communicatively coupled to other network nodes in the peer-to-peer network, the computerized method comprising: receiving, from a remotely located computing device, a request to transfer a security token; executing a plurality of compliance rules associated with the security token, wherein at least one of the plurality of compliance rules is implemented using at least one smart contract, wherein the at least one smart contract references a global registry; and transferring the security token based on the execution of the plurality of compliance rules, wherein the global

21

registry comprises at least one personally identifiable information (PII) hash for each of at least one investor associated with the transfer of the security token, wherein the at least one PII hash for each of the at least one investor is committed to the distributed ledger, wherein each of the at least one PII hash is updated when PII of a respective investor of the at least one investor changes.

64.    Claim 24 of the '496 Patent recites: The computerized method of claim 13, wherein the request to transfer the security token is a request to transfer the security token from a first address to a second address, wherein the computerized method further comprises: before the request to transfer the security token is received, determining a split ratio for a new split of security tokens held in at least one address of the distributed ledger without updating token balances on the distributed ledger; determining a split-updated token balance for at least the first address based on at least an indication of the split ratio; and wherein the token balances on the distributed ledger are updated for at least the first address based on the split-updated token balance for at least the first address as part of a transaction associated with the transfer of the security token.

65.    A claim chart showing how the DS Protocol meets each of the elements of claims 13 and 24 of the '496 Patent is attached hereto as **Exhibit 8**.

66.    Further, on information and belief, Securitize has and continues to indirectly infringe one or more claims of the '496 Patent, including claims 13 and 24, by knowingly and intentionally inducing others, including third-party customers and/or end-users to directly infringe, either literally or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or importing into the United States DS Protocol.

22

67.    On information and belief, Securitize, with knowledge that DS Protocol infringes the '496 Patent at least as of the date these Amended Counterclaims were filed, knowingly and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '496 Patent by its third-party customers and/or end-users who pay Securitize a fee for transactions and other services performed by DS Protocol.

68.    Securitize induced, with specific intent, infringement of the '496 Patent by its third-party customers and/or end-users by encouraging them and instructing them to use DS Protocol to infringe the '496 Patent. Securitize has created and disseminated blog posts, technical materials, instructional materials and marketing materials online that encourage and promote the use of DS Protocol to infringe the '496 Patent. See, DS Protocol – The Compliance Service, *available at* https://medium.com/securitize/ds-protocol-the-compliance-service-b6fe472d625d; DS Protocol – The Basic Elements, *available at* https://medium.com/securitize/ds-protocol-the-basic-elements-23fabcb5c85f; DS Protocol – The Compliance Service Elements, *available at* https://medium.com/securitize/ds-protocol-the-basic-elements-23fabcb5c85f (last visited June 17, 2026); DS Protocol – The Trust and Registry Services, *available at* https://medium.com/securitize/ds-protocol-the-trust-and-registry-services-91d1c4630f78. Securitize took these actions with the specific intent to induce acts constituting infringement, and knowing that the induced acts constitute patent infringement, either literally or under the doctrine of equivalents.

69.    Securitize has actively encouraged infringement by others by also making DS Protocol's reference implementation and code repository available online as open-source code. This encourages others to infringe by providing access to the infringing system and its components. https://github.com/securitize-io/DSTokenInterfaces (last visited June 17, 2026).

70. On information and belief, Securitize has actively been contributing and is now knowingly contributing to direct infringement by their customers, third parties, and one another, by selling, offering for sale and/or importing, and knowingly selling, offering for sale and/or importing within the United States DS Protocol, with knowledge that the infringing technology is especially made for use in infringement of the '496 Patent. Securitize has contributed to the infringement by others with knowledge that the infringing technology in DS Protocol is a material part of the patented invention, with knowledge that the infringing technology is not a staple article of commerce suitable for substantial non-infringing use, and with knowledge that others do not have any substantial non-infringing uses therefor. Securitize has such knowledge at least because the claimed features of the '496 Patent are used by tZERO within the United States.

71. tZERO has been damaged by, and will continue to be damaged by, Securitize's infringement of the '496 Patent, and is therefore entitled to recover damages from Securitize to compensate for the infringement under at least 35 U.S.C. § 284, to recover damages from Securitize in an amount adequate to compensate for its acts of infringement, but in no event less than a reasonable royalty for Securitize's acts of infringement, together with interest and costs as fixed by the Court.

**COUNT 4: INFRINGEMENT OF U.S. PATENT NO. 12,099,996**

72. tZERO realleges and incorporates by reference the allegations contained in the preceding paragraphs.

73. Securitize has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims (including, at least, claim 1) of the '996 Patent, in violation of 35 U.S.C. Section 271(a) by, at least, making, using, selling, offering for

24

sale, and/or importing DS Protocol within the United States. DS Protocol has been placed in the stream of commerce into the United States by Securitize and has been imported into, used, sold, and/or offered for sale in the United States

74.     Claim 1 of the '996 Patent recites: A system comprising: a computer system; and a remotely located computing device connected to at least one network and configured to cryptographically sign data by cryptographically transforming the data using a private key to create cryptographically signed data, the data communicated by the computer system, the private key having: (1) a corresponding public key derived from the private key and (2) a corresponding transaction address associated with the corresponding public key and derived from at least one of the private key and the corresponding public key; the computer system comprising: at least one processor; at least one memory communicatively coupled to the at least one processor; at least one network interface communicatively coupled to the at least one processor; and wherein the at least one processor is configured to: receive a request to cryptographically transfer a cryptographic token into a target transaction address from the remotely located computing device via the at least one network using the at least one network interface; communicate the data to the remotely located computing device via the at least one network using the at least one network interface in response to the request to cryptographically transfer the cryptographic token into the target transaction address being received from the remotely located computing device via the at least one network using the at least one network interface; comply with a first smart contract to restrict withdrawal of the cryptographic token to only: (1) whitelisted transaction addresses identified in a smart contract-implemented whitelist or (2) whitelisted public keys that are associated with the whitelisted transaction addresses identified in the smart contract-implemented whitelist; receive the cryptographically signed data from the remotely located

25

computing device via the at least one network using the at least one network interface; receive at least one of the target transaction address or a target public key associated with the target transaction address from the remotely located computing device via the at least one network using the at least one network interface; cryptographically verify that the at least one of the target transaction address or the target public key associated with the target transaction address corresponds to the private key used to cryptographically sign the cryptographically signed data by: receiving both (1) the cryptographically signed data cryptographically signed by the private key and (2) the at least one of the target transaction address or the target public key associated with the target transaction address into a processor-implemented cryptographic verification function; and outputting a determination from the processor-implemented cryptographic verification function that at least one of: (1) the target transaction address is cryptographically derivable from the private key used to cryptographically sign the cryptographically signed data such that the target transaction address is the corresponding transaction address associated with the corresponding public key and derived from at least one of the private key and the corresponding public key; or (2) the target public key associated with the target transaction address is cryptographically derivable from the private key used to cryptographically sign the cryptographically signed data such that the target public key is the corresponding public key derived from the private key; only verify that the at least one of the target transaction address or the target public key associated with the target transaction address is whitelisted to receive cryptographic transfer of the cryptographic token after the target transaction address or the target public key associated with the target transaction address is identified in the smart contract-implemented whitelist; only communicate the cryptographic transfer, via the at least one network and using the at least one network interface, to a blockchain to cryptographically transfer and

26

record the cryptographic transfer of the cryptographic token into the target transaction address on the blockchain after: (1) cryptographically verifying that the at least one of the target transaction address or the target public key associated with the target transaction address corresponds to the private key used to cryptographically sign the cryptographically signed data; and (2) verifying that the at least one of the target transaction address or the target public key associated with the target transaction address is whitelisted to receive the cryptographic transfer of the cryptographic token after the target transaction address or the target public key associated with the target transaction address is identified in the smart contract-implemented whitelist; and reject (1) the cryptographic transfer of the cryptographic token into the target transaction address and (2) communication of the cryptographic transfer, via the at least one network and using the at least one network interface, to the blockchain when it is not both: (1) cryptographically verified that the at least one of the target transaction address or the target public key associated with the target transaction address is cryptographically derivable from the private key used to cryptographically sign the cryptographically signed data; and (2) verified that the at least one of the target transaction address or the target public key associated with the target transaction address is whitelisted to receive the cryptographic transfer of the cryptographic token based on the smart contract-implemented whitelist.

75.     A claim chart showing how the DS Protocol meets each of the elements of claim 1 of the '996 Patent is attached hereto as **Exhibit 9**.

76.     Further, on information and belief, Securitize has and continues to indirectly infringe one or more claims of the '996 Patent, including claim 1, by knowingly and intentionally inducing others, including third-party customers and/or end-users to directly

27

infringe, either literally or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or importing into the United States DS Protocol.

77.    On information and belief, Securitize, with knowledge that DS Protocol infringes the '996 Patent at least as of the June 15, 2026 correspondence from tZERO, knowingly and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '996 Patent by its third-party customers and/or end-users who pay Securitize a fee for transactions and other services performed by DS Protocol.

78.    Securitize induced, with specific intent, infringement of the '996 Patent by its third-party customers and/or end-users by encouraging them and instructing them to use DS Protocol to infringe the '996 Patent. Securitize has created and disseminated blog posts, technical materials, instructional materials and marketing materials online that encourage and promote the use of DS Protocol to infringe the '996 Patent. See, DS Protocol Interfaces Released, available at https://medium.com/@jorge.serna/ds-protocol-first-code-release-7470e4d45ae6 (last visited June 17, 2026); DS Protocol – The Basic Elements, available at https://medium.com/securitize/ds-protocol-the-basic-elements-23fabcb5c85f; DS Protocol – The Compliance Service Elements, https://medium.com/securitize/ds-protocol-the-basic-elements-23fabcb5c85f (last visited June 17, 2026). Securitize took these actions with the specific intent to induce acts constituting infringement, and knowing that the induced acts constitute patent infringement, either literally or under the doctrine of equivalents.

79.    Securitize has actively encouraged infringement by others by also making DS Protocol's reference implementation and code repository available online as open-source code. This encourages others to infringe by providing access to the infringing system and its components. https://github.com/securitize-io/DSTokenInterfaces (last visited June 17, 2026).

28

80.    On information and belief, Securitize has actively been contributing and is now knowingly contributing to direct infringement by their customers, third parties, and one another, by selling, offering for sale and/or importing, and knowingly selling, offering for sale and/or importing within the United States DS Protocol, with knowledge that the infringing technology is especially made for use in infringement of the '996 Patent. Securitize has contributed to the infringement by others with knowledge that the infringing technology in DS Protocol is a material part of the patented invention, with knowledge that the infringing technology is not a staple article of commerce suitable for substantial non-infringing use, and with knowledge that others do not have any substantial non-infringing uses therefor. Securitize has such knowledge at least because the claimed features of the '996 Patent are used by tZERO within the United States.

81.    On information and belief, Securitize knew or should have known of the '996 Patent and has acted, and continues to act, in an egregious and wanton manner by infringing the '996 Patent. On information and belief, Securitize's infringement of the '996 Patent has been and continues to be willful and deliberate.

82.    On information and belief, despite knowing that its actions constituted infringement of the '996 Patent and/or knowing that there was a high likelihood that its actions constituted infringement of the patent, Securitize nevertheless continued its infringing actions.

83.    tZERO has been damaged by, and will continue to be damaged by, Securitize's infringement of the '996 Patent, and is therefore entitled to recover damages from Securitize to compensate for the infringement under at least 35 U.S.C. § 284, to recover damages from Securitize in an amount adequate to compensate for its acts of infringement, but in no event less

29

than a reasonable royalty for Securitize's acts of infringement, together with interest and costs as fixed by the Court.

84.     Securitize's infringement is deliberate, intentional, and willful at least because Securitize has had notice of infringement of the '996 Patent since receiving tZERO's letter dated June 15, 2026 and continues to infringe the '996 Patent.

**COUNT 5: INFRINGEMENT OF U.S. PATENT NO. 12,051,078**

85.     tZERO realleges and incorporates by reference the allegations contained the preceding paragraphs.

86.     Securitize has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims (including, at least, claim 1) of the '078 Patent, in violation of 35 U.S.C. Section 271(a) by, at least, making, using, selling, offering for sale, and/or importing DS Protocol within the United States. DS Protocol has been placed in the stream of commerce into the United States by Securitize and has been imported into, used, sold, and/or offered for sale in the United States

87.     Claim 1 of the '078 Patent recites: A computerized method, comprising: causing at least one of know-your-customer (KYC), anti-money laundering (AML), and accredited investor review to be initially performed for an owner of a transaction account; receiving payment of an amount of cryptocurrency from the transaction account to another account; sending a challenge string to a customer device to be signed by a private key of a wallet of the owner; receiving the challenge string with a signature from the private key of the wallet of the owner; validating the signature against the transaction account on a distributed ledger that is tagged or whitelisted by: deriving a public key corresponding to the private key of the wallet of the owner from the signature; hashing the public key to form a hash; and comparing the hash

30

against the transaction account on the distributed ledger that is tagged or whitelisted; determining that the payment of the amount of cryptocurrency is received at the another account from the transaction account and the signature is successfully validated; causing the at least one of KYC, AML, and accredited investor review to be performed again for the owner of the transaction account; determining that the at least one of KYC, AML, and accredited investor review being performed again causes a status of the owner of the transaction account to change; adding at least one indication of the status of the owner in the distributed ledger by: recording at least one tag into the transaction account; and adding the transaction account or the public key of the owner to at least one whitelist implemented on at least one smart contract; or removing at least one indication of the status of the owner to the distributed ledger by: removing at least one tag from the transaction account; and removing the transaction account or the public key of the owner from at least one whitelist implemented on at least one smart contract.

88.     A claim chart showing how the DS Protocol meets each of the elements of claim 1 of the '078 Patent is attached hereto as **Exhibit 10**.

89.     On information and belief, Securitize has and continues to indirectly infringe one or more claims of the '078 Patent, including claim 1, by knowingly and intentionally inducing others, including third-party customers and/or end-users to directly infringe, either literally or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or importing into the United States DS Protocol.

90.     On information and belief, Securitize, with knowledge that DS Protocol infringes the '078 Patent at least as of the June 15, 2026 correspondence from tZERO, knowingly and intentionally induced, and continues to knowingly and intentionally induce direct infringement of

31

the '078 Patent by its third-party customers and/or end-users who pay Securitize a fee for transactions and other services performed by DS Protocol.

91.   Securitize induced, with specific intent, infringement of the '078 Patent by its third-party customers and/or end-users by encouraging them and instructing them to use DS Protocol to infringe the '078 Patent. Securitize has created and disseminated blog posts, technical materials, instructional materials and marketing materials online that encourage and promote the use of DS Protocol to infringe the '078 Patent. See, DS Protocol v4 — Evolving Real World Assets, *available at* https://medium.com/securitize/ds-protocol-v4-evolving-real-world-assets-8b0bc5c67846; DS Protocol — The Trust and Registry Services, *available at* https://medium.com/securitize/ds-protocol-the-trust-and-registry-services-91d1c4630f78; DS Protocol – The Basic Elements, available at https://medium.com/securitize/ds-protocol-the-basic-elements-23fabcb5c85f; DS Protocol – The Compliance Service Elements, https://medium.com/securitize/ds-protocol-the-basic-elements-23fabcb5c85f (last visited June 17, 2026). Securitize took these actions with the specific intent to induce acts constituting infringement, and knowing that the induced acts constitute patent infringement, either literally or under the doctrine of equivalents.

92.   Securitize has actively encouraged infringement by others by also making DS Protocol's reference implementation and code repository available online as open-source code. This encourages others to infringe by providing access to the infringing system and its components. https://github.com/securitize-io/DSTokenInterfaces (last visited June 17, 2026).

93.   On information and belief, Securitize has actively been contributing and is now knowingly contributing to direct infringement by their customers, third parties, and one another, by selling, offering for sale and/or importing, and knowingly selling, offering for sale and/or

importing within the United States DS Protocol, with knowledge that the infringing technology is especially made for use in infringement of the '078 Patent. Securitize has contributed to the infringement by others with knowledge that the infringing technology in DS Protocol is a material part of the patented invention, with knowledge that the infringing technology is not a staple article of commerce suitable for substantial non-infringing use, and with knowledge that others do not have any substantial non-infringing uses therefor. Securitize has such knowledge at least because the claimed features of the '078 Patent are used by tZERO within the United States.

94. On information and belief, Securitize knew or should have known of the '078 Patent and has acted, and continues to act, in an egregious and wanton manner by infringing the '078 Patent. On information and belief, Securitize's infringement of the '078 Patent has been and continues to be willful and deliberate.

95. On information and belief, despite knowing that its actions constituted infringement of the '078 Patent and/or knowing that there was a high likelihood that its actions constituted infringement of the patent, Securitize nevertheless continued its infringing actions.

96. tZERO has been damaged by, and will continue to be damaged by, Securitize's infringement of the '078 Patent, and is therefore entitled to recover damages from Securitize to compensate for the infringement under at least 35 U.S.C. § 284, to recover damages from Securitize in an amount adequate to compensate for its acts of infringement, but in no event less than a reasonable royalty for Securitize's acts of infringement, together with interest and costs as fixed by the Court.

33

97.     Securitize's infringement is deliberate, intentional, and willful at least because Securitize has had notice of infringement of the '078 Patent since receiving tZERO's letter dated June 15, 2026 and continues to infringe the '078 Patent.

### PRAYER FOR RELIEF

WHEREFORE, tZERO respectfully prays for the following relief:

A.     A finding that Securitize is liable for infringement of at least one claim of each the Asserted Patents-in-Suit.

B.     Award tZERO damages adequate to compensate it for Securitize's infringement of the Asserted Patents-in-Suit, pursuant to 35 U.S.C. § 284.

C.     A finding that this case is exceptional under 35 U.S.C. § 285 and award tZERO its reasonable attorneys' fees accordingly.

D.     Enter a permanent injunction preventing Securitize from committing acts of infringement of the Asserted Patents-in-Suit.

E.     Award tZERO pre-judgment and post-judgment interest.

F.     Tax tZERO's costs to Securitize.

G.     Award tZERO such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), tZERO hereby demands a trial by jury on all issues and claims so triable.

34

OF COUNSEL:

Kirk R. Harris
Maschoff Brennan
1389 Center Drive, Suite 300
Park City, UT 80098
(435) 252-1360
kharris@mabr.com

Erynn Embree
Maschoff Brennan
100 Spectrum Center Dr., Suite 1200
Irvine, CA 92618
(949) 202-1900
eembree@mabr.com

By: */s/ Frederick L. Cottrell, III*
Frederick L. Cottrell, III (#2555)
Christine D. Haynes (#4697)
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, DE  19801
(302) 651-7700
cottrell@rlf.com
haynes@rlf.com

*Attorneys for Defendant tZERO IP, LLC*

Dated: ~~June 26~~July 17, 2026

35